

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-20-2009

# Mouhamadou Fall v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-4292

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Mouhamadou Fall v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1517.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1517

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-4292
_____

MOUHAMADOU MOUSTAPHA FALL,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A073-536-067)
Immigration Judge:  Honorable Andrew R. Arthur

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 17, 2009

Before:  RENDELL, FUENTES AND ALDISERT, Circuit Judges

(Opinion filed: April 20, 2009 )
_____

OPINION
_____


PER CURIAM

Mouhamadou Moustapha Fall petitions for review of the BIA's decision denying

his applications for suspension of deportation, asylum, withholding of removal and relief

under the Convention Against Torture ("CAT"). For the following reasons, we will deny the petition for review.

Fall, a native and citizen of Senegal, was born in Dakar. He entered the United States on January 17, 1993, on an F-1 student visa, which authorized him to attend the University of Nevada in Reno, Nevada. Fall never attended that university. Fall filed an initial application for asylum on October 30, 1994, with the help of a friend. On July 25, 1995, the government issued an Order to Show Cause ("OSC") and Notice of Hearing charging Fall as being a nonimmigrant who failed to maintain or comply with the conditions of the nonimmigrant status under which he was admitted under INA § 241(a)(1)(C)(i) (1995). Fall never received the OSC, and the case was administratively closed. He was not ordered removed in absentia.

On March 30, 2007, Fall was convicted of making false statements in an application for a passport and was sentenced to time served. (A.R. 573.)[1] Fall states that he received a re-issued OSC on July 17, 2007, while in ICE custody. Fall conceded removability and applied for suspension from deportation, asylum, withholding and protection under CAT.

At his merits hearing, Fall testified that he is of Jola ethnicity. In the 1980s, he attended a university in Senegal to study medicine. Students often went on strike to

---

[1]The record indicates that Fall falsely stated that his place of birth was Jackson, Mississippi. (A.R. 568.)

protest the low stipends and overall inadequate conditions. Fall testified that he was arrested three times during student demonstrations in 1985, 1988, and 1990.

On the first occasion, Fall was arrested along with other students, held in a prison for a week, and questioned. On the second occasion, he was again arrested and detained for about a week in filthy conditions. The Criminal Investigations Division (DIC), charged with investigating student strike leaders, questioned Fall about his ethnic background and whether he belonged to the MFDC, a Casamance separatist group led by Jolas. Fall told them that if all Jolas were deemed supportive of MFDC, then he was, too. On the third occasion, Fall was again arrested along with ten to twenty other students engaged in a strike. He was jailed for two weeks and occasionally blindfolded and beaten with a rubber club. His captors questioned him about his motives for striking, but Fall refused to answer.

In 1988, Fall was expelled from his medical studies, after which he completed a degree in English literature. Fall testified that two of his sisters applied for asylum in Italy, but his mother remains in Dakar. He testified that his mother has not experienced any problems since his last arrest in 1990. His father passed away in 1994.

Fall stated that he fears that the Senegalese government will punish him for his past involvement in the student movement and his affiliation with the MFDC separatist group. He also fears "splinter groups" within the MFDC that may target him due to his western education and his desire not to participate in their activism.

The IJ denied all relief. The IJ determined that Fall was ineligible for suspension of deportation because his conviction for making a false statement in a passport application was a crime involving moral turpitude. The IJ also determined that Fall had not testified credibly in support of his asylum, withholding and CAT application, but that even if he had, Fall had failed to meet his burden of proof of past persecution. The IJ concluded that Fall had similarly failed to demonstrate a well-founded fear of future persecution, because his mother remained in Senegal unharmed, and splinter groups within the MFDC were no longer at odds.

The BIA rejected his due process arguments and his challenge to the IJ's denial of suspension of deportation. The BIA also adopted and affirmed the IJ's decision with respect to asylum, withholding and CAT relief and dismissed his appeal. Fall petitioned for review.

We have jurisdiction to review a final order of removal of the BIA under 8 U.S.C. § 1252(a)(1). Abdulai v. Ashcroft, 239 F.3d 542, 547 (3d Cir. 2001). "[W]e review the IJ's opinion to the extent the BIA relied upon it." Lin v. Att'y Gen., 543 F.3d 114, 119 (3d Cir. 2008). We review the BIA's and IJ's factual findings for substantial evidence. Briseno-Flores v. Att'y Gen., 492 F.3d 226, 228 (3d Cir. 2007). On appeal, Fall raises three principal arguments: (1) the government improperly re-issued a 1995 OSC in 2007, in violation of due process; (2) he is entitled to suspension of deportation because the IJ implicitly determined that he was of good moral character; and (3) the BIA erroneously

4

denied his applications for asylum, withholding and CAT relief.

Fall's due process claim lacks merit. To prevail on a due process claim, a petitioner must show "substantial prejudice." Jarbough v. Att'y Gen., 483 F.3d 184, 191 (3d Cir. 2007). The initial charging document contained one charge: violation of the conditions of non-immigrant status under INA § 241(a)(1)(C)(i) (1995). Although Fall never received the initial charging document at the time it was issued, no action was taken at that time, and his case was administratively closed. The government re-issued the OSC in July 2007, at which time it again charged Fall with noncompliance with the terms of his non-immigrant visa. Although Fall argues that this delayed re-issuance was improper, he does not contest that he had failed to comply with the terms of his non-immigrant visa nor does he suggest that the fact of his noncompliance had changed in the intervening years. The BIA declined to address Fall's concerns regarding the charging document on the basis that the government has prosecutorial discretion, not reviewable by the IJ or the BIA, to issue an OSC. We conclude that the government has the authority to pursue removal on grounds previously charged, even though the proceedings against the petitioner had been administratively closed. See Arca-Pineda v. Att'y Gen., 527 F.3d 101, 104-05 (3d Cir. 2008) (administrative closure does not terminate immigration proceedings, but merely removes the case from the immigration judge's calendar). As Fall was neither ordered removed in absentia, nor suffered any prejudice as a result of the delay, he has failed to raise a meritorious due process claim.

We similarly conclude that Fall's claim for suspension of deportation must fail.

The BIA determined that Fall was ineligible for "suspension of deportation," a form of

relief that was repealed by the passage of IIRIRA and that was replaced by cancellation of

removal under INA § 240A, effective April 1, 1997.  See Hernandez v. Gonzales, 437

F.3d 341, 345 (3d Cir. 2006) (comparing suspension of deportation and cancellation of

removal).  Suspension of deportation required, in part, that the alien demonstrate that he

has been of good moral character during a requisite period of continuous stay in the

United States.  Hernandez, 437 F.3d at 345.  The BIA determined that Fall had not

satisfied this requirement because he had been convicted of making a false statement in a

passport application, in violation of 18 U.S.C. § 1542, and that this was a crime involving

moral turpitude.  Matter of Correa-Garces, 20 I. & N. Dec. 451, 454 (BIA 1992); see also

Rodriguez v. Gonzales, 451 F.3d 60, 61 (2d Cir. 2006) (holding that 18 U.S.C. § 1542 is a

crime involving moral turpitude).  As this Court lacks jurisdiction over an IJ's

discretionary determination regarding moral character, we will dismiss Fall's petition as

to the BIA's ruling on suspension of deportation.[2]  8 U.S.C. § 1252(a)(2)(B)(i); see

---

[2]Fall contends that the IJ implicitly determined that he was of good moral character because he offered him voluntary departure, a requirement of which is that the petitioner be of good moral character.  However, the transcripts reveal that the IJ did not actually consider petitioner's moral character in determining his eligibility for voluntary departure. The IJ, however, did explicitly consider moral character when evaluating petitioner's claim for cancellation of removal and determined that petitioner's conviction tainted his character.  Therefore, we find no contradiction between the IJ's grant of voluntary departure and his finding that Fall was ineligible for cancellation of removal.

Mendez-Moranchel v. Ashcroft, 338 F.3d 176, 178 (3d Cir. 2003).

We also determine that substantial evidence supports the BIA's decision to deny Fall asylum, withholding of removal or relief under CAT. The BIA agreed with the IJ that Fall lacked credibility because of inconsistencies between his 1994 asylum application and his testimony at the hearing, but that even if Fall had testified credibly, he had failed to meet his burden of proof. In particular, Fall did not testify that he suffered any extreme harm that would constitute persecution. See Wong v. Att'y Gen., 539 F.3d 225, 232 (3d Cir. 2008)(discussing definition of persecution). He did not testify that he suffered any serious injuries, nor that he ever sought medical help as a result of his detentions. Accordingly, we may not disturb the BIA's conclusion regarding past persecution.

We also agree with the IJ and BIA that Fall lacked a well-founded fear of future persecution. Fall's own testimony indicated that he had not experienced any trouble with the Senagalese government during his last three years in the country (1990-1993), nor has his mother, who remains in Dakar, experienced trouble in recent years. See Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005) ("[W]hen family members remain in petitioner's native country without meeting harm, and there is no individualized showing that petitioner would be singled out for persecution, the reasonableness of a petitioner's well-founded fear of future persecution is diminished."). Although Fall states that his sisters have received asylum in Italy, he does not state the bases of their claims nor

7

contend that the standards for asylum in Italy and the United States are comparable. In light of his mother's continued existence in Dakar, unharmed, as well as his ability to live in Senegal for several years unharmed, we conclude that substantial evidence supports the BIA's decision regarding future persecution.

Finally, we find no error in the BIA's decision denying withholding of removal and CAT relief. A denial of asylum necessarily requires that Fall's claim for withholding be rejected as well. Yu v. Att'y Gen., 513 F.3d 346, 349 (3d Cir. 2008). Similarly, the record does not compel the conclusion that it is more likely than not that Fall will suffer torture if he is not granted relief. Substantial evidence supports the BIA's decision to deny Fall's CAT claim. Accordingly, to the extent that we have jurisdiction, we will deny Fall's petition for review.